UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

    -v.-

ALEKSANDER LIPKIN,
    a/k/a "Alex,"
    a/k/a "Shorty,"
    a/k/a "Melekiy,"
GALINA ZHIGUN,
GARRI ZHIGUN,
MARYANN FURMAN,
    a/k/a "Marina,"
IGOR MISHELEVICH,
    a/k/a "Ryzhiy,"
ALEX GORVITS,
    a/k/a "Lyosha,
MARINA DUBIN,
IGOR BUZAKHER,
    a/k/a "Jeff,"
JOSEPH PAPERNY,
DANIEL MIKHLIN,
    a/k/a "Danik,"
JOHN GELIN,
    a/k/a "Buddha,"
FRANSWA LIGON,
FUAD YAKUBOV,
RICARDO ACOSTA,
ERIC CALLAHAN,
DOUGLAS ELLISON,
OLEG ANOKHIN,
DAVID NEUSTEIN,
TOMER SINAI,
    a/k/a "Tom,"
NATHANIEL KESSMAN,
CARL CARR,
JOHN CIAFOLO,
LUCIANNE MORELLO,
FAINA PETROVSKAYA,
MARIYA BADYUK
    a/k/a "Masha," and
MARINA KLOTSMAN,

    Defendants.

- - - - - - - - - - - - - - - - - -x

:
:
: **TO BE FILED UNDER SEAL** *RCD*
:
:
: **SUPERSEDING INDICTMENT**
:
: S1 06 Cr. 1179 (RJH)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:



## COUNT ONE

(CONSPIRACY TO COMMIT BANK FRAUD, WIRE FRAUD AND MAIL FRAUD)

The Grand Jury charges:

## BACKGROUND

1.    At all times relevant to this Indictment, AGA Capital NY, Inc. ("AGA Capital"), was a mortgage brokerage firm with various office locations in Brooklyn, New York.  In or about late 2006, AGA Capital changed its name to Lending Universe Corporation ("Lending Universe").

2.    At various times relevant to this Indictment, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, MARYANN FURMAN, a/k/a "Marina," IGOR MISHELEVICH, ALEX GORVITS, a/k/a "Lyosha," LUCIANNE MORELLO, and MARIYA BADYUK, a/k/a "Masha," the defendants, and others were employed by AGA Capital and Lending Universe.  GORVITS and MISHELEVICH, the defendants, previously worked at Northside Capital NY, Inc. d/b/a Northside Capital Corporation ("Northside Capital"), another mortgage brokerage firm in Brooklyn, New York, with defendants JOSEPH PAPERNY and IGOR BUZAKHER, a/k/a "Jeff," and others.

3.    During the time relevant to this Indictment, Northside Capital, AGA Capital, and its successor, Lending Universe, brokered over one thousand home mortgages and home

equity loans, commonly referred to as sub-prime loans, with
various banks and lending institutions with branch offices
located in Tarrytown and White Plains, New York, among other
places ("the lenders"), with a total face value of at least two
hundred million dollars. Northside Capital, AGA Capital and
Lending Universe earned a total of at least four million dollars
in commission fees on these loans. As described more fully
below, the lenders that issued the mortgages and loans brokered
by Northside Capital, AGA Capital and Lending Universe have
suffered actual losses of at least 4.5 million dollars as a
result of the defendants' scheme to defraud.

### THE SCHEME TO DEFRAUD

        4.    As set forth more fully below, from in or about
2004 through in or about June 2007, ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, GARRI
ZHIGUN, MARYANN FURMAN, a/k/a "Marina," IGOR MISHELEVICH, a/k/a
"Ryzhiy," ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, IGOR
BUZAKHER, a/k/a "Jeff," JOSEPH PAPERNY, DANIEL MIKHLIN, a/k/a
"Danik," JOHN GELIN, a/k/a "Buddha," FRANSWA LIGON, FUAD YAKUBOV,
RICARDO ACOSTA, ERIC CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN,
DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL
CARR, JOHN CIAFOLO, LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA
BADYUK, a/k/a "Masha," and MARINA KLOTSMAN, the defendants,
engaged in an illegal scheme to defraud various lenders by

submitting applications and supporting documentation for mortgages and home equity loans with false or misleading information, in order to induce those lenders to make loans to persons and at terms that the lenders otherwise would not have funded.

5.    As part of the scheme to defraud, the defendants identified properties for sale in all five boroughs of New York City, New Jersey and Sullivan County, New York, among other places (the "target properties"). Some of the target properties were already in foreclosure proceedings; as is described more fully below, other target properties were already controlled by certain of the defendants; and still other target properties were owned by other individuals. The defendants typically purchased the target properties with one or more mortgages and/or home equity loans amounting to 100 percent of the purchase price of the property, thus ensuring that the defendants did not have any money at risk in the fraudulent transactions.

6.    As a further part of the scheme to defraud, the defendants sought to obtain mortgages and/or home equity loans to purchase the target properties without having to identify their ownership interest in the properties. To that end, the defendants recruited individuals to act as purchasers of the target properties, when, in fact, these purchasers, or "straw buyers," relinquished their interest in and control over the

target properties to the defendants upon completion of the closing of the mortgage or loan.

7.  The defendants identified persons to be straw buyers who fit a certain financial profile that would enable them to obtain credit from the lenders at favorable terms. Specifically, the defendants sought persons with a particular threshold credit rating, as measured by commercial credit rating agencies, to be straw buyers.  Once a potential straw buyer had been identified and agreed to participate in the scheme in exchange for a fee, the defendants then submitted loan applications to the lenders on behalf of the straw buyers.

8.  As a further part of the scheme to defraud, the defendants fraudulently improved the straw buyer's credit worthiness by falsifying certain personal and financial information about the straw buyer that was material to the lenders in their lending decisions.  The defendants prepared and submitted to various lenders, by facsimile, email and other means, loan applications and other documentation purporting to accurately represent the personal and financial information of each straw buyer.  In fact, the defendants prepared and submitted false and misleading information concerning the straw buyer's current residence, employment, income, assets, and existing debt, among other things.  In support of these false and misleading representations, the defendants also created false documentation,

such as bank statements and proof of income, that the lenders relied upon to verify the statements in the loan applications.

9.   In addition to false statements concerning the straw buyer's financial profile, the defendants falsely represented to the lenders that certain straw buyers intended to reside in the property that would secure each mortgage or loan, when, in fact, the defendants intended to use the property for their own investment purposes.

10.   As a further part of the scheme to defraud, in some instances, the defendants did not use paid straw buyers but rather stole the identities of persons who fit a certain financial profile and submitted loan applications on behalf of these persons without their knowledge.

11.   As a further part of the scheme to defraud, the defendants sought mortgages and home equity loans for the target properties at values that were in excess of the properties' actual sale prices and, thus, the properties' fair market values. To support applications for loans in excess of the properties' market values, the defendants procured artificially inflated appraisals of the market value of the target properties.  Using these false and misleading appraisals, the defendants received mortgages and other loans in excess of the actual sale price of the properties securing the loans.  The difference between the appraised value of the property and the property's actual sale

price (the "spread") represented, in part, the defendants'
profits from the scheme.  The defendants distributed the spread
from each fraudulently obtained mortgage loan amongst themselves
for their personal gain.  The defendants also earned commissions
of at least 2 percent and as much as 4 percent on the
fraudulently inflated loan values, in addition to fees and other
monies distributed upon the closing of each property.

        12.  As a further part of the scheme to defraud, once
the purchase of the target properties had been funded, the
defendants caused the straw buyers of certain of the target
properties to default on their mortgage payments.  As a result,
the lenders were forced either to foreclose on those properties,
or to re-purchase the properties from the straw buyers for less
than the face amount of the loan.  With respect to certain other
target properties, the defendants rented them to tenants and used
the rent and other monies earned from the scheme to make mortgage
payments on behalf of the straw buyers for a certain period of
time.  At the end of that period of time, the defendants would
sell the properties, sometimes selling them again to straw buyers
and extracting additional monies from the lenders with these re-
sales, or flips, of the properties.

### THE DEFENDANTS

        13.  At all times relevant to this Indictment, GALINA
ZHIGUN, the defendant, was the owner and registered broker of AGA

Capital, and MARYANN FURMAN, a/k/a "Marina," the defendant,
served as the office manager of AGA Capital.  GALINA ZHIGUN had
hiring and firing responsibility, general oversight of the
operations of AGA Capital, and earned a salary based, at least in
part, on the commissions earned by AGA Capital's mortgage
brokers.  FURMAN acted as GALINA ZHIGUN's office manager,
processed loans for certain mortgage brokers, and supervised
certain other loan processors' preparation of loans application
documents for various lenders.

        14.  At all times relevant to this Indictment,
ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy,"
IGOR MISHELEVICH, a/k/a ""Ryzhiy," ALEX GORVITS, a/k/a "Lyosha,"
IGOR BUZAKHER, a/k/a "Jeff," DANIEL MIKHLIN, a/k/a "Danik," and
JOSEPH PAPERNY, the defendants, acted as mortgage brokers (the
"defendant mortgage brokers").  They supervised and coordinated
the submission of fraudulent loan applications and other
documents to the lenders, and brokered the resulting loans.

        15.  At various times relevant to this Indictment,
GARRI ZHIGUN, the defendant, operated out of AGA Capital and
served as the silent partner to ALEKSANDER LIPKIN, a/k/a "Alex,"
a/k/a "Shorty," a/k/a "Melekiy," the defendant, in various real
estate transactions.

        16.  At all times relevant to this Indictment, MARINA
DUBIN, the defendant, was a real estate paralegal who served as

the settlement agent for a majority of the loans that were
fraudulently obtained by the defendants.  DUBIN organized
closings, prepared documents and disbursed the fraudulently
obtained loan proceeds to various defendants.

17.  At all times relevant to this Indictment, JOHN
GELIN, a/k/a "Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO
ACOSTA, ERIC CALLAHAN, and OLEG ANOKHIN, the defendants, served
as intermediaries between the defendant mortgage brokers and the
straw buyers.  GELIN, LIGON, YAKUBOV, ACOSTA, CALLAHAN, and
ANOKHIN, among other acts, identified target properties,
identified and recruited straw buyers, and falsified certain
information provided to the lenders, in order to obtain mortgage
or home equity loans.

18.  At all times relevant to this Indictment, DAVID
NEUSTEIN and TOMER SINAI, a/k/a "Tom," the defendants, acted as
real estate appraisers and provided the defendant mortgage
brokers, including LIPKIN, MISHELEVICH, GORVITS, BUZAKHER, and
PAPERNY, among others, with falsely inflated appraisal values and
descriptions of target properties.

19.  At all times relevant to this Indictment,
NATHANIEL KESSMAN, CARL CARR, and JOHN CIAFOLO were employed by
certain lenders and knowingly facilitated the scheme to defraud
by assisting the defendant mortgage brokers, including LIPKIN,
MISHELEVICH, GORVITS, BUZAKHER, and PAPERNY, among others, in

obtaining approval from their employers for loan applications containing false and misleading representations.

20. At all times relevant to this Indictment, LUCIANNE MORELLO, FAINA PETROVSKAYA, and MARIYA BADYUK, the defendants, were loan processors who knowingly assisted the defendant mortgage brokers in preparing documents containing false and misleading information for submission to lenders.

21. At all times relevant to this Indictment, MARIYA BADYUK, a/k/a "Masha," and MARINA KLOTSMAN, the defendants, acted as straw buyers and knowingly participated in the purchase of various properties with the proceeds of fraudulently obtained loans.

**THE CONSPIRACY**

22. From at least in or about 2004, up to and including in or about January 2007, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN, MARYANN FURMAN, a/k/a "Marina," IGOR MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH PAPERNY, DANIEL MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a "Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO, LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA BADYUK,

a/k/a "Masha," and MARINA KLOTSMAN, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1341, 1343 and 1344 of Title 18, United States Code.

23.    It was a part and an object of the conspiracy that ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN, MARYANN FURMAN, a/k/a "Marina," IGOR MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH PAPERNY, DANIEL MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a "Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO, LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA BADYUK, a/k/a "Masha," and MARINA KLOTSMAN, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in

11

violation of Title 18, United States Code, Section 1344.

24.  It was further a part and an object of the
conspiracy that ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty,"
a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN, MARYANN FURMAN,
a/k/a "Marina," IGOR MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS,
a/k/a "Lyosha," MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH
PAPERNY, DANIEL MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a
"Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC
CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER
SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO,
LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA BADYUK, a/k/a
"Masha," and MARINA KLOTSMAN, the defendants, and others known
and unknown, unlawfully, willfully and knowingly would and did
devise a scheme and artifice to defraud financial institutions,
and to obtain money and property from financial institutions,
banks, and others, by means of false and fraudulent pretenses
representations and promises, and for the purpose of executing
such schemes and attempting to do so, would and did transmit and
cause to be transmitted by means of wire and radio communication
in interstate and foreign commerce, writings, signs, signals,
pictures and sounds, in violation of Title 18, United States
Code, Section 1343.

25.  It was further a part and an object of the
conspiracy that ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty,"

a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN, MARYANN FURMAN,
a/k/a "Marina," IGOR MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS,
a/k/a "Lyosha," MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH
PAPERNY, DANIEL MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a
"Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC
CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER
SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO,
LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA BADYUK, a/k/a
"Masha," and MARINA KLOTSMAN, the defendants, and others known
and unknown, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by
means of false and fraudulent pretenses, representations and
promises, for the purpose of executing such scheme and artifice
and attempting so to do, unlawfully, willfully and knowingly
would and did place in a post office and authorized depository
for mail matter, matters and things to be sent and delivered by
the Postal Service, and would and did take and receive therefrom,
such matters and things, and would and did knowingly cause to be
delivered by mail according to the direction thereon, and at the
place at which it was directed to be delivered by the person to
whom it was addressed, such matters and things, in violation of
Title 18, United States Code, Section 1341.

## OVERT ACTS

26.  In furtherance of the conspiracy and to effect the

illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a.    On or about January 25, 2005, IGOR MISHELEVICH, a/k/a "Ryzhiy," the defendant, submitted and caused to be submitted by facsimile from Brooklyn, New York to a Countrywide Home Loans branch office in Jacksonville, Florida, a home mortgage loan application containing false employment and other information.

      b.    On or about March 7, 2005, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, submitted and caused to be submitted by facsimile from Brooklyn, New York to a Countrywide Home Loans branch office in Jacksonville, Florida, a home mortgage loan application containing false financial and other information.

      c.    On or about July 29, 2005, MARINA DUBIN and IGOR BUZAKHER, a/k/a "Jeff," the defendants, received $475,000 in proceeds from a loan obtained using a straw buyer for the purchase of a property located in the Bronx, New York.

      d.    In or about October 2005, LIPKIN and MARIYA BADYUK, a/k/a "Masha," the defendants, submitted false employment and financial information about BADYUK to BNC Mortgage Company in order to procure a mortgage loan for the purchase of a property in Sullivan County, New York.

e.    In or about January 2006, LIPKIN and GARRI ZHIGUN, the defendants, through a corporate entity, purchased a block of ten rent-regulated apartments at 243 West 98th Street, New York, New York ("the Apartments"), for approximately $8 million, and then immediately transferred title in the Apartments to, among other people, GALINA ZHIGUN and MARYANN FURMAN, a/k/a "Marina," the defendants.

f.    On or about January 13, 2006, GALINA ZHIGUN, the defendant, submitted and caused to be submitted to Flagstar Bank a home mortgage loan application containing false information about ZHIGUN's intent to occupy 243 West 98th Street, Apartment 4C, New York, New York in order to procure mortgage loans for the purchase of that Apartment.

g.    On or about January 13, 2006, MARYANN FURMAN, a/k/a "Marina," the defendant, submitted and caused to be submitted to New Century Mortgage a home mortgage loan application containing false information about FURMAN's intent to occupy 243 West 98th Street, Apartment 3B, New York, New York in order to procure a mortgage loan for the purchase of that Apartment.

h.    On or about June 5, 2006, at approximately 12:55 p.m., ALEX GORVITS, a/k/a "Lyosha," the defendant, had a telephone conversation with DOUGLAS ELLISON, the defendant, in which, in substance and in part, GORVITS asked ELLISON for his

15

help in finding a straw buyer.

    i.   On or about June 6, 2006, at approximately 6:28
p.m., ALEX GORVITS, a/k/a "Lyosha," had a telephone conversation
with a co-conspirator not named as a defendant herein ("CC-1") in
which, in substance and in part, they discussed a mortgage
application that was rejected because the straw buyer's income
was too low and GORVITS told CC-1 that it was suspicious to have
a bus driver buying an expensive home.

    j.   On or about June 8, 2006, at approximately 12:59
p.m., ALEX GORVITS, a/k/a "Lyosha,"  had a telephone conversation
with DAVID NEUSTEIN, the defendant, in which, in substance and in
part, GORVITS asked NEUSTEIN to appraise a property at a
particular value.

    k.   On or about June 21, 2006, at approximately 2:50
p.m., GORVITS had a telephone conversation with ELLISON in which,
in substance and in part, they discussed a property in Georgia
that ELLISON was interested in purchasing.  During this
conversation, GORVITS told ELLISON that, unlike New York, Georgia
is not a good state in which to do flip schemes and that it would
be very difficult to find an appraiser in Georgia with whom they
could do business.

    l.   On or about June 27, 2006, at approximately 1:28
p.m., GORVITS had a telephone conversation with JOHN CIOFALO, the
defendant, in which, in substance and in part, they discussed how

16

the straw buyer for a piece of property apparently had more than
one social security number, and that the buyer, therefore, had
two different credit reports.

m.   On or about June 27, 2006, at approximately 6:41
p.m., GORVITS had a telephone call with FUAD YAKUBOV, the
defendant, in which, in substance and in part, YAKUBOV assured
GORVITS that he would find a suitable straw buyer, and GORVITS
stated that the straw buyers were asking for too much money.

n.   On or about June 27, 2006, at approximately 2:07
p.m., GORVITS had a telephone conversation with JOHN GELIN, a/k/a
"Buddha," the defendant, in which, in substance and in part, they
discussed finding a different straw buyer for a particular
property, and GORVITS explained the benefits of using a first-
time home buyer as the straw buyer, rather than someone who had
made multiple real estate purchases.

o.   On or about June 28, 2006, at approximately 2:23
p.m., GORVITS had a telephone conversation with BUZAKHER, in
which, in substance and in part, they discussed which bank would
not scrutinize a straw buyer's credit if BUZAKHER submitted an
application for full financing of the purchase of a three-family
house.

p.   On or about June 28, 2006, at approximately 6:02
p.m., GORVITS had a telephone conversation with FRANSWA LIGON,
the defendant, in which, in substance and in part, they discussed

17

a straw buyer's credit rating and LIGON noted that the straw buyer would be used to purchase multiple properties.

q.    On or about June 30, 2006, at approximately 3:49 p.m., GORVITS had a telephone conversation with GELIN in which, in substance and in part, they discussed various straw buyers, and GORVITS and GELIN agreed to use the straw buyers with the best credit ratings for the biggest deals with the largest spread between the inflated sale price and the actual sale price.

r.    On or about July 6, 2006, at approximately 9:11 p.m., GORVITS had a telephone conversation with MISHELEVICH in which, in substance and in part, GORVITS asked MISHELEVICH to find him a straw buyer for a big project, and GORVITS specified that the straw buyer needed a good credit rating and fifty thousand dollars in bank accounts.

s.    On or about July 7, 2006, at approximately 12:19 p.m., GORVITS had a telephone conversation with LIGON in which, in substance and in part, they discussed the fact that a straw buyer's credit rating had gone down, GORVITS told LIGON that they would have to raise the straw buyer's reported income, and GORVITS stated that he could make such a change to the mortgage application because GORVITS knew someone inside the bank who could help him.

t.    On or about July 11, 2006, at approximately 12:02 p.m., GORVITS had a telephone conversation with CARL CARR, the

defendant, in which, in substance and in part, they discussed their profit from a real estate transaction they had previously completed together, and CARR noted that he could make more money by doing another deal with ALEX LIPKIN.

u.   On or about August 25, 2006, at approximately 2:25 p.m., MISHELEVICH had a telephone conversation with a co-conspirator not named as a defendant herein ("CC-2") in which, in substance and in part, MISHELEVICH explained to CC-2 how to make it appear to a lender that MARINA KLOTSMAN, the defendant, who was acting as a straw buyer, had withdrawn $60,000 from her bank account for a down payment.

v.   On or about August 28, 2006, at approximately 5:38 p.m., LIPKIN had a telephone conversation with MISHELEVICH, in which, in substance and in part, MISHELEVICH stated that he was going to do a deal with OLEG ANOHKIN, the defendant, and LIPKIN directed MISHELEVICH to find an appraiser who would give MISHELEVICH the highest possible appraisal.

w.   On or about September 7, 2006, at approximately 12:42 p.m., MISHELEVICH had a telephone conversation with FAINA PETROVSKAYA, the defendant, in which, in substance and in part, they discussed several upcoming closings with straw buyers.  With respect to one property, PETROVSKAYA told MISHELEVICH that they could close on it because the straw buyer had signed certain documents.  With respect to another straw buyer's loan

19

application, PETROVSKAYA stated, in substance and in part, that she had tried to submit the application to a lender, but that none of the banks wanted to do the deal.

      x.  On or about September 8, 2006, at approximately 12:15 p.m., MISHELEVICH had a telephone conversation with RICARDO ACOSTA, the defendant, in which, in substance and in part, they discussed obtaining an inflated appraisal for a property they wanted to purchase with a straw buyer, and MISHELEVICH and ACOSTA agreed to contact TOMER SINAI, the defendant to conduct an appraisal.

      y.  On or about September 9, 2006, at approximately 2:27 p.m., MISHELEVICH had a telephone conversation with YAKUBOV in which, in substance and in part, YAKUBOV stated that a straw buyer had complained because a bank had called the straw buyer about his failure to make mortgage payments. YAKUBOV, in substance and in part, asked MISHELEVICH to take care of the problem, and noted that the straw buyer might tell on everyone.

      z.  On or about September 12, 2006, at approximately 1:01 p.m., MISHELEVICH had a telephone conversation with ACOSTA in which, in substance and in part, ACOSTA specified the value at which SINAI should appraise a particular property.

      aa.  On or about September 20, 2006, at approximately 12:05 p.m., MISHELEVICH had a telephone conversation with ERIC CALLAHAN, the defendant, in which, in substance and in part,

CALLAHAN said that he needed MISHELEVICH to help him close a deal because he needed the money to use in his other deals.

      bb.  On or about September 21, 2005, at approximately 11:07 a.m., MISHELEVICH had a telephone conversation with CALLAHAN in which, in substance and in part, MISHELEVICH explained that a mortgage application had been rejected by five different banks but that MISHELEVICH would try to submit the application to another two lenders, and CALLAHAN stated that he, GELIN and LIGON had to meet in order to match straw buyers to various properties.

      cc.  On or about September 28, 2006, at approximately 3:54 p.m., MISHELEVICH had a telephone conversation with PETROVSKAYA in which, in substance and in part, they discussed the submission of fraudulent mortgage applications.

      dd.  On or about September 29, 2006, at approximately 1:08 p.m., MISHELEVICH had a telephone conversation with CIOFALO in which, in substance and in part, they discussed the various ways they could change a straw buyer's loan application for an investment property to an owner-occupied property, including by submitting false documents to the lender.

      ee.  On or about October 3, 2006, at approximately 1:24 p.m., MISHELEVICH had a telephone conversation with NEUSTEIN in which, in substance and in part, MISHELEVICH asked NEUSTEIN to conduct an appraisal of one of the Apartments in a building in

Manhattan, where NEUSTEIN had previously done appraisals.

ff.  On or about October 10, 2006, at approximately 3:34 p.m., MISHELEVICH had a telephone conversation with DANIEL MIKHLIN, a/k/a "Danik," the defendant, in which, in substance and in part, MIKHLIN asked MISHELEVICH whether MISHELEVICH had a contact working for a lender who could facilitate one of MIKHLIN's real estate deals.

gg.  On or about October 11, 2006, at approximately 12:36 p.m., MISHELEVICH had a telephone conversation with NATHANIEL KESSMAN, the defendant, in which, in substance and in part, MISHELEVICH explained that he needed to submit corrected bank statements in connection with the mortgage application file of straw buyer MARINA KLOTSMAN, the defendant.

hh.  On or about October 11, 2006, at approximately 2:43 p.m., MISHELEVICH had a telephone conversation with KESSMAN in which, in substance and in part, KESSMAN stated that the purchase price of the property was too high, and that it appeared to be a flip.  KESSMAN told MISHELEVICH to lower the price and to provide KESSMAN with new documents reflecting the lower price.

ii.  On or about October 12, 2006, MISHELEVICH, MARINA DUBIN and KLOTSMAN attended a closing for a fraudulently obtained mortgage at a law office located in Brooklyn, New York.

jj.  On or about October 16, 2006, at approximately 3:25 p.m., MISHELEVICH had a telephone conversation with MIKHLIN

22

in which they discussed, in substance and in part, how to divide the proceeds of a fraudulently obtained mortgage loan.

kk.  On or about November 10, 2006, at approximately 2:55 p.m., LIPKIN had a telephone conversation with LUCIANNE MORELLO, the defendant, in which, in substance and in part, MORELLO reprimanded LIPKIN for failing to carefully examine the paperwork before a closing, and explained that, as a result, the file was being investigated by the bank.

ll.  On or about November 10, 2006, at approximately 5:29 p.m., LIPKIN had a telephone conversation with DUBIN in which, in substance and in part, LIPKIN inquired about a problem that JOSEPH PAPERNY, the defendant, was having with a property, and DUBIN explained that she had stopped making mortgage payments on that property because it had been held for thirteen months and was ready to be sold.

mm.  On or about November 13, 2006, at approximately 2:11 p.m., LIPKIN and DUBIN had a telephone conversation in which, in substance and in part, DUBIN described how the husband of a disgruntled straw buyer of one of PAPERNY's properties had threatened DUBIN, saying that a million-dollar mortgage had been closed without his or his wife's knowledge.

nn.  On or about November 15, 2006, at approximately 5:48 p.m., LIPKIN had a telephone conversation with MISHELEVICH in which, in substance and in part, LIPKIN noted that MISHELEVICH

23

had paid himself and others approximately $25,000 from one deal, and asked MISHELEVICH when he planned on paying LIPKIN.

oo.  On or about November 16, 2006, at approximately 12:29 p.m., LIPKIN had a telephone conversation with DUBIN in which, in substance and in part, she told him that a straw buyer had contacted one of the lenders and complained that the straw buyer had not signed any documents or received any money from the lender.  DUBIN noted that PAPERNY, not the straw buyer, was the owner.

pp.  On or about November 29, 2006, LIPKIN had a telephone conversation with BUZAKHER in which, in substance and in part, they discussed how to finance the purchase of a property using a straw buyer.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Bank Fraud re: 1370 Park Place, Brooklyn, New York)

The Grand Jury further charges:

27.  In on or about November 2004, in the Southern District of New York and elsewhere, ALEX GORVITS, a/k/a "Lyosha," the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by,

24

and under the custody and control of, such financial institution,
by means of false and fraudulent pretenses, representations and
promises, to wit, GORVITS submitted, and caused to be submitted,
false employment and financial information, among other things,
to the Tarrytown, New York branch office of First Franklin
Financial Corporation, in order to procure home mortgage loans in
the amount of $565,000 for the purchase of residential real
estate.

(Title 18, United States Code, Sections 1344 and 2.)

### COUNT THREE

(Bank Fraud re: 184 Willowbrook Road, Staten Island)

The Grand Jury further charges:

28.  In on or about September 2005, in the Southern
District of New York and elsewhere, MARINA DUBIN, IGOR BUZAKHER,
a/k/a "Jeff," and JOSEPH PAPERNY, the defendants, unlawfully,
willfully, and knowingly did execute, and attempt to execute, a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations and promises, to
wit, DUBIN, BUZAKHER, and PAPERNY submitted, and caused to be
submitted, false employment and financial information to First

Franklin in order to procure home mortgage loans in the amount of $580,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FOUR

(Bank Fraud re: 221 Washington Avenue, Brooklyn, New York)

The Grand Jury further charges:

29.  In on or about September 2005, in the Southern District of New York and elsewhere, MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," and NATHANIEL KESSMAN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DUBIN, BUZAKHER, NEUSTEIN, SINAI and KESSMAN submitted and caused to be submitted false employment and financial information and false real estate appraisals to First Franklin in order to procure home mortgage loans in the amount of $1.5 million for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FIVE

(Bank Fraud re: 1058 Decatur Street, Brooklyn, New York)

The Grand Jury further charges:

30. In on or about May 2005, in the Southern District of New York and elsewhere, ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, TOMER SINAI, a/k/a "Tom," and NATHANIEL KESSMAN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, GORVITS, DUBIN, SINAI and KESSMAN submitted and caused to be submitted false employment information and false real estate appraisals to First Franklin in order to procure home mortgage loans in the amount of $544,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX

(Bank Fraud re: 100 Oceana Avenue, Apt. 3E, Brooklyn, New York)

The Grand Jury further charges:

31. In on or about December 2005, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a

27

"Alex," a/k/a "Shorty," a/k/a "Melekiy," DAVID NEUSTEIN, OLEG

ANOKHIN, and MARYANN FURMAN, a/k/a "Marina," the defendants,

unlawfully, willfully, and knowingly did execute, and attempt to

execute, a scheme and artifice to defraud a financial

institution, the deposits of which were then insured by the

Federal Deposit Insurance Corporation, and to obtain moneys,

funds, credits, assets, securities, and other property owned by,

and under the custody and control of, such financial institution,

by means of false and fraudulent pretenses, representations and

promises, to wit, LIPKIN, NEUSTEIN and ANOKHIN submitted and

caused to be submitted false employment, financial and residency

information to Washington Mutual Bank, in order to procure a home

mortgage loan in the amount of $862,500 for the purchase of

residential real estate.

（Title 18, United States Code, Sections 1344 and 2.)

## COUNT SEVEN

(Wire Fraud re: 225-19 113th Ave, Queens Village, New York)

The Grand Jury further charges:

32.  In or about May 2005, in the Southern District of

New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a

"Shorty," a/k/a/ "Melekiy," the defendant, unlawfully, willfully,

and knowingly did devise a scheme and artifice to defraud and to

obtain property by means of false and fraudulent pretenses and

representations, and did transmit and cause to be transmitted by

means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, LIPKIN submitted and caused to be submitted by facsimile false financial information and other information from Brooklyn, New York to a Countrywide Home Loans branch office in Florida in order to procure a home mortgage loan in the amount of $396,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT EIGHT

(Wire Fraud re: 330 Old Tacy Road, Kauneonga Lake, New York)

The Grand Jury further charges:

33.  In or about October 2005, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," MARINA DUBIN, JOHN CIOFALO, and MARIYA BADYUK, the defendants, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, LIPKIN, DUBIN, CIOFALO and BADYUK submitted and caused to be submitted documents containing false employment and other information by interstate facsimile and other means to BNC Mortgage Company in order to procure a

home mortgage loan in the amount of $396,000.

(Title 18, United States Code, Sections 1343 and 2.)

## 243 West 98th Street Properties

### COUNTS NINE THROUGH TWELVE

(Bank Fraud on Flagstar Bank re: 243 West 98th Street,
Apartments 4B, 4C and 6E, New York, NY)

The Grand Jury further charges:

34.  On or about the dates set forth below, in the
Southern District of New York and elsewhere, the defendants
identified in the table below, unlawfully, willfully, and
knowingly did execute, and attempt to execute, a scheme and
artifice to defraud a financial institution, the deposits of
which were then insured by the Federal Deposit Insurance
Corporation, and to obtain moneys, funds, credits, assets,
securities, and other property owned by, and under the custody
and control of, such financial institution, by means of false and
fraudulent pretenses, representations and promises, to wit, the
defendants identified in the table below, in order to obtain home
mortgage and/or equity loans totaling $1,849,500, submitted and
caused to be submitted to Flagstar Bank documents containing
false information and material omissions regarding the borrower's
intent to live in the Apartment as a primary residence, the fair
market value of the Apartment, and the fact that the Apartment
was subject to New York's rent regulation laws, among other
things.

30

| Count | Defendants | Date | Loan Amount and Apt. No. |
|-------|-----------|------|--------------------------|
| Nine | ALEKSANDER LIPKIN, GARRI ZHIGUN, GALINA ZHIGUN, DAVID NEUSTEIN | 1/13/06 | $870,000 Apt. 4C |
| Ten | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, a/k/a "Lyosha," DAVID NEUSTEIN | 5/4/06 | $320,000 Apt. 4C |
| Eleven | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR, DAVID NEUSTEIN | 5/9/06 | $322,000 Apt. 4B |
| Twelve | ALEKSANDER LIPKIN, GARRI ZHIGUN, DAVID NEUSTEIN, JOSEPH PAPERNY | 4/13/06 | $337,500 Apt. 6E |

(Title 18, United States Code, Sections 1344 and 2.)

### COUNTS THIRTEEN AND FOURTEEN

(Bank Fraud on Bank United re: 243 West 98th Street, Apartments 4C and 7E, New York, NY)

The Grand Jury further charges:

35. On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets,

31

securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $1,900,000, submitted and caused to be submitted to Bank United documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary residence, the borrower's employment and income, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date | Loan Amount and Apt. No. |
|---|---|---|---|
| Thirteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, MARINA DUBIN | 4/12/06 | $1,000,000 Apt. 4C |
| Fourteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, MARINA DUBIN | 3/15/06 | $900,000 Apt. 7E |

(Title 18, United States Code, Sections 1344 and 2.)

### COUNT FIFTEEN

(Bank Fraud on First National Bank of Arizona re: 243 West 98th Street, Apartment 6E, New York, NY)

The Grand Jury further charges:

36.   On or about January 23, 2006, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a

"Alex," a/k/a "Shorty," a/k/a "Melekiy," GARRI ZHIGUN, GALINA ZHIGUN, and DAVID NEUSTEIN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," LIPKIN, GARRI ZHIGUN, GALINA ZHIGUN and DAVID NEUSTEIN, the defendants, submitted and caused to be submitted to First National Bank of Arizona documents containing false information and material omissions regarding the fair market value of the Apartment and the fact that the Apartment was subject to New York's rent regulation laws, among other things, in order to procure home mortgage and/or equity loans in the amount of $616,500 for the purchase of Apartment 6E.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNTS SIXTEEN THROUGH NINETEEN

(Wire Fraud on No Red Tape Mortgage re: 243 West 98th Street, Apartments 2C, 2B, 4B and 7A New York, NY)

The Grand Jury further charges:

37.    On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants

33

identified in the table below, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $3,876,000, which loans were funded on or about the dates identified in the table below, submitted and caused to be submitted, by interstate wire transmissions and other means, to No Red Tape Mortgage documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary residence, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|-------|------------|--------------|---------------------------|
| Sixteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, DAVID NEUSTEIN | 1/13/06 | $783,000 Apt. 2C |
| Seventeen | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, MARINA DUBIN | 4/12/06 | $980,000 Apt. 2B |

| Eighteen | ALEKSANDER LIPKIN,<br>GARRI ZHIGUN,<br>MARYANN FURMAN,<br>a/k/a "Marina,"<br>DAVID NEUSTEIN | 1/23/06 | $783,000<br>Apt. 4B |
|---|---|---|---|
| Nineteen | ALEKSANDER LIPKIN,<br>GARRI ZHIGUN,<br>OLEG ANOKHIN,<br>MARINA DUBIN | 6/23/06 | $1,330,000<br>Apt. 7A |

(Title 18, United States Code, Sections 1343 and 2.)

### COUNTS TWENTY THROUGH TWENTY-FIVE

(Wire Fraud on National City Corporation re:
243 West 98th Street, Apartments 2B, 2C, 4B, 4C,
6E and 7E, New York, NY)

The Grand Jury further charges:

38.  On or about the dates set forth below, in the
Southern District of New York and elsewhere, the defendants
identified in the table below, unlawfully, willfully, and
knowingly did devise a scheme and artifice to defraud and to
obtain property by means of false and fraudulent pretenses and
representations, and did transmit and cause to be transmitted by
means of wire and radio communication in interstate commerce, a
writing, sign, signal, picture and sound, to wit, the defendants
identified in the table below, in order to obtain home mortgage
and/or equity loans totaling $1,876,250, which loans were funded
by interstate wire transmissions on or about the dates identified
in the table below, submitted and caused to be submitted to
National City Corporation documents containing false information
and material omissions regarding the borrower's intent to live in

35

the Apartment as a primary residence, the borrower's employment

and income, the fair market value of the Apartment, and the fact

that the Apartment was subject to New York's rent regulation

laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|-------|-----------|--------------|---------------------------|
| Twenty | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY | 4/12/06 | $350,000 Apt. 2B |
| Twenty-One | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOHN GELIN, a/k/a "Buddha," | 9/12/06 | $350,000 Apt. 2C |
| Twenty-Two | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR | 4/18/06 | $315,000 Apt. 4B |
| Twenty-Three | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, a/k/a "Lyosha" | 4/17/06 | $330,000 Apt. 4C |
| Twenty-Four | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, DAVID NEUSTEIN | 5/1/06 | $281,250 Apt. 6E |
| Twenty-Five | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, MARINA DUBIN, DAVID NEUSTEIN | 3/16/06 | $250,000 Apt. 7E |

(Title 18, United States Code, Sections 1343 and 2.)

## COUNTS TWENTY-SIX THROUGH TWENTY-EIGHT

(Wire Fraud on New Century Mortgage re: 243 West 98th Street,
Apartments 3A, 3B and 7A, New York, NY)

The Grand Jury further charges:

39.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $2,180,000, submitted and caused to be submitted to New Century Mortgage, by interstate facsimile and other means, documents containing false information and material omissions regarding the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|-------|-----------|--------------|---------------------------|
| Twenty-Six | ALEKSANDER LIPKIN, GARRI ZHIGUN, DAVID NEUSTEIN | 1/13/06 | $680,000 Apt. 3A |

| Twenty-Seven | ALEKSANDER LIPKIN, GARRI ZHIGUN, MARYANN FURMAN, a/k/a "Marina," DAVID NEUSTEIN | 1/12/06 | $750,000 Apt. 3B |
| Twenty-Eight | ALEKSANDER LIPKIN, GARRI ZHIGUN, DAVID NEUSTEIN | 1/17/06 | $750,000 Apt. 7A |

(Title 18, United States Code, Sections 1343 and 2.)

## COUNTS TWENTY-NINE THROUGH THIRTY-TWO

(Wire Fraud on First Magnus Financial Corporation re: 243 West 98th Street, Apartments 2C, 4B, 6E and 7E, New York, NY)

The Grand Jury further charges:

40. On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $2,912,500, which loans were authorized by interstate wire transmissions on or about the dates identified in the table below, submitted and caused to be submitted to First Magnus Financial Corporation documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary

38

residence, the borrower's employment and income, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|---|---|---|---|
| Twenty-Nine | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOHN GELIN, a/k/a "Buddha," | 9/12/06 | $980,000 Apt. 2C |
| Thirty | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR, MARINA DUBIN | 4/17/06 | $980,000 Apt. 4B |
| Thirty-One | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, DAVID NEUSTEIN, MARINA DUBIN | 4/13/06 | $787,500 Apt. 6E |
| Thirty-Two | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, DAVID NEUSTEIN | 5/6/06 | $165,000 Apt. 7E |

(Title 18, United States Code, Sections 1343 and 2.)

### COUNTS THIRTY-THREE THROUGH THIRTY-FIVE

(Mail Fraud on BNC Mortgage Company re: 243 West 98th Street, Apartments 2B, 5E and 7E, New York, NY)

The Grand Jury further charges:

41.  In or about January 2006, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GARRI ZHIGUN, and DAVID NEUSTEIN, the defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations and
promises, to wit, a scheme to obtain home mortgage and/or equity
loans totaling $2,042,000 by, among other things, submitting and
causing to be submitted to BNC Mortgage Company documents
containing false representations and material omissions regarding
the fair market value of the Apartment identified in the table
below and the fact that the Apartment identified in the table
below was subject to New York's rent regulation laws, among other
things, for the purpose of executing such scheme and artifice and
attempting so to do, unlawfully, willfully and knowingly would
and did place in a post office and authorized depository for mail
matter, matters and things to be sent and delivered by the Postal
Service, and would and did take and receive therefrom, such
matters and things, and would and did knowingly cause to be
delivered by mail according to the direction thereon, and at the
place at which it was directed to be delivered by the person to
whom it was addressed, such matters and things, to wit,
ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy,"
GARRI ZHIGUN, and DAVID NEUSTEIN, the defendants, and others
known and unknown, caused the following mailings to be made via
the Postal Service, for the purpose of defrauding BNC Mortgage
Company:

| Count | Date of mortgage | Mailing |
|-------|------------------|---------|
| Thirty-Three | 1/23/06 | mortgage for Apt. 2B for $746,000 |

40

```
Thirty-Four    1/23/06      mortgage for Apt. 5E for $616,500
Thirty-Five    1/13/06      mortgage for Apt. 7E for $680,000
```

(Title 18, United States Code, Sections 1341 and 2.)

### FIRST FORFEITURE ALLEGATION

42.  As a result of committing the offense alleged in Count One of this Indictment, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN, MARYANN FURMAN, a/k/a "Marina," IGOR MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH PAPERNY, DANIEL MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a "Buddha," FRANSWA LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC CALLAHAN, DOUGLAS ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO, LUCIANNE MORELLO, FAINA PETROVSKAYA, MARIYA BADYUK, a/k/a "Masha," and MARINA KLOTSMAN, the defendants, shall forfeit to the United States pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the conspiracy to commit the bank, wire and mail fraud offenses alleged in Count One of this Indictment, including but not limited to the following:

a.  At least $200 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense

41

alleged in Count One of the Indictment, for which the defendants are jointly and severally liable;

      b.    Any interest of ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in the real property and appurtenances thereto known as 1085 Seawane Drive, Hewlett Harbor, New York;

      c.    Any interest of JOSEPH PAPERNY, the defendant, in the real property and appurtenances thereto known as 25 Four Columns Drive, Morganville, New Jersey.

### SECOND FORFEITURE ALLEGATION

      43.    As a result of committing the mail, wire and/or bank fraud offenses alleged in Counts Two through Thirty-Five of this Indictment, the defendants shall forfeit to the United States pursuant to 18 U.S.C. § 982 any property constituting or derived from proceeds obtained directly or indirectly as a result of the mail, wire and/or bank fraud offenses alleged in Counts Two through Thirty-Five of this Indictment, including but not limited to at least $10,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the mail, wire and/or bank fraud offenses charged in Counts Two through Thirty-Five of the Indictment.

### SUBSTITUTE ASSET PROVISION

42

44.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendant(s):

(1)   cannot be located upon the exercise of due
diligence;

(2)   has been transferred or sold to, or deposited
with, a third person;

(3)   has been placed beyond the jurisdiction of the
Court;

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §
982(b), to seek forfeiture of any other property of said
defendant(s) up to the value of the above forfeitable property,
including but not limited to the following:

a.   Any interest of ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in a 2007
blue two-door Bentley vehicle, bearing New York license plate
DSW1419;

b.   Any interest of ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in the
real property and appurtenances thereto known as 293 Avenue S,
Brooklyn, New York;

43

        c.    Any interest of MARINA DUBIN, the defendant, in the real property and appurtenances thereto known as 293 Avenue S, Brooklyn, New York;

        d.    Any interest of ALEX GORVITS, a/k/a "Lyosha," the defendant, in the real property and appurtenances thereto known as 274 Norway Avenue, Staten Island, New York.

        e.    Any interest of IGOR BUZHAKER, a/k/a "Jeff," the defendant, in the real property and appurtenances thereto known as:

                i.    457 Bedford Avenue, Staten Island, New York;

                ii.    212 Lefferts Place, Brooklyn, New York;

                iii. 924 Jefferson Avenue, Brooklyn, New York;

                iv.    553 Gates Avenue, Brooklyn, New York;

                v.    99 Avenue U, Brooklyn, New York; and

                vi.    284 Mac Dougal Street, Brooklyn, New York.

    f. Any interest of OLEG ANOKHIN, the defendant, in the real property and appurtenances thereto known as:

     i. 67 Sharrotts Road, Staten Island, New York;

     ii. 100 Oceana Drive West, Apartment 6J, Brooklyn, New York;

     iii. 40 Oceana Drive West, Apartment 9C, Brooklyn, New York.

(Title 18, United States Code, Section 982 and Title 18, United States Code, Sections 1341, 1343 and 1344.)

_Madeline Couton_
FOREPERSON

_Michael G. Garcia / DM_
MICHAEL J. GARCIA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a
"Shorty," a/k/a "Melekiy,"
GALINA ZHIGUN,
GARRI ZHIGUN,
MARY ANN FURMAN, a/k/a "Marina,"
IGOR MISHELEVICH, a/k/a "Ryzhiy,"
ALEX GORVITS, a/k/a "Lyosha,"
MARINA DUBIN,
IGOR BUZAKHER, a/k/a "Jeff,"
JOSEPH PAPERNY,
DANIEL MIKHLIN, a/k/a "Danik,"
JOHN GELIN, a/k/a "Buddha,"
FRANSWA LIGON,
FUAD YAKUBOV,
RICARDO ACOSTA,
ERIC CALLAHAN,
DOUGLAS ELLISON,
OLEG ANOKHIN,
DAVID NEUSTEIN,
TOMER SINAI, a/k/a "Tom,"
NATHANIEL KESSMAN,
CARL CARR,
JOHN CIAFOLO,
LUCIANNE MORELLO,
FAINA PETROVSKAYA,
MARIYA BADYUK, a/k/a "Masha," and
MARINA KLOTSMAN,

Defendants.

INDICTMENT

S1 06 Cr. 1179 (RJH)

(18 U.S.C. §§ 1341, 1343, 1344, 1349)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

*Madeline Couton*

Foreperson.

*Poot 11/87*

*For Indictment filed.*

*T. Maas, USMJ*