authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

## OVERT ACTS

27.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about January 25, 2005, IGOR MISHELEVICH, a/k/a "Ryzhiy," the defendant, submitted and caused to be submitted by facsimile from Brooklyn, New York to a Countrywide Home Loans branch office in Jacksonville, Florida, a home mortgage loan application containing false employment and other information.

b.    On or about March 7, 2005, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, submitted and caused to be submitted by facsimile from Brooklyn, New York to a Countrywide Home Loans branch office in Jacksonville, Florida, a home mortgage loan application

14

containing false financial and other information.

c.    On or about July 29, 2005, MARINA DUBIN and IGOR BUZAKHER, a/k/a "Jeff," the defendants, received $475,000 in proceeds from a loan obtained using a straw buyer for the purchase of a property located in the Bronx, New York.

d.    In or about October 2005, LIPKIN and MARIYA BADYUK, a/k/a "Masha," the defendants, submitted false employment and financial information about BADYUK to BNC Mortgage Company in order to procure a mortgage loan for the purchase of a property in Sullivan County, New York.

e.    In or about January 2006, LIPKIN and GARRI ZHIGUN, the defendants, through a corporate entity, purchased a block of ten rent-regulated apartments at 243 West 98th Street, New York, New York ("the Apartments"), for approximately $8 million, and then immediately transferred title in the Apartments to, among other people, GALINA ZHIGUN and MARYANN FURMAN, a/k/a "Marina," the defendants.   ALEXANDER KAPLAN, the defendant, represented LIPKIN and GARRI ZHIGUN in the purchase of the Apartments. KAPLAN also represented GALINA ZHIGUN and FURMAN, among others, in their assumption of title to the Apartments, and the financing of the Apartments.

f.    On or about January 13, 2006, GALINA ZHIGUN, the defendant, submitted and caused to be submitted to Flagstar Bank a home mortgage loan application containing false information

15

about ZHIGUN's intent to occupy 243 West 98th Street, Apartment 4C, New York, New York in order to procure mortgage loans for the purchase of that Apartment.

g.    On or about January 13, 2006, MARYANN FURMAN, a/k/a "Marina," the defendant, submitted and caused to be submitted to New Century Mortgage a home mortgage loan application containing false information about FURMAN's intent to occupy 243 West 98th Street, Apartment 3B, New York, New York in order to procure a mortgage loan for the purchase of that Apartment.

h.    On or about January 13, 2006, ALEXSANDER LIPKIN and GHARRI ZHIGUN, the defendants, caused funds to be wired by No Red Tape Mortgage from Texas to an attorney's escrow account, through a bank in Manhattan.

i.    On or about January 23, 2006, ALEXSANDER LIPKIN and GHARRI ZHIGUN, the defendants, caused loans to close for apartments located at 243 West 98th Street, New York, New York, and subsequently caused the recorded mortgages to be mailed from the New York County recording office to BNC Mortgage Company in California.

j.    On or about June 5, 2006, at approximately 12:55 p.m., ALEX GORVITS, a/k/a "Lyosha," the defendant, had a telephone conversation with DOUGLAS ELLISON, the defendant, in which, in substance and in part, GORVITS asked ELLISON for his

help in finding a straw buyer.

k.    On or about June 6, 2006, at approximately 6:28 p.m., ALEX GORVITS, a/k/a "Lyosha," had a telephone conversation with a co-conspirator not named as a defendant herein ("CC-1") in which, in substance and in part, they discussed a mortgage application that was rejected because the straw buyer's income was too low and GORVITS told CC-1 that it was suspicious to have a bus driver buying an expensive home.

l.    On or about June 8, 2006, at approximately 12:59 p.m., ALEX GORVITS, a/k/a "Lyosha," had a telephone conversation with DAVID NEUSTEIN, the defendant, in which, in substance and in part, GORVITS asked NEUSTEIN to appraise a property at a particular value.

m.    On or about June 21, 2006, at approximately 2:50 p.m., GORVITS had a telephone conversation with ELLISON in which, in substance and in part, they discussed a property in Georgia that ELLISON was interested in purchasing.  During this conversation, GORVITS told ELLISON that, unlike New York, Georgia is not a good state in which to do flip schemes and that it would be very difficult to find an appraiser in Georgia with whom they could do business.

n.    On or about June 27, 2006, at approximately 1:28 p.m., GORVITS had a telephone conversation with JOHN CIOFALO, the defendant, in which, in substance and in part, they discussed how

the straw buyer for a piece of property apparently had more than
one social security number, and that the buyer, therefore, had
two different credit reports.

      o.  On or about June 27, 2006, at approximately 6:41
p.m., GORVITS had a telephone call with FUAD YAKUBOV, the
defendant, in which, in substance and in part, YAKUBOV assured
GORVITS that he would find a suitable straw buyer, and GORVITS
stated that the straw buyers were asking for too much money.

      p.  On or about June 27, 2006, at approximately 2:07
p.m., GORVITS had a telephone conversation with JOHN GELIN, a/k/a
"Buddha," the defendant, in which, in substance and in part, they
discussed finding a different straw buyer for a particular
property, and GORVITS explained the benefits of using a first-
time home buyer as the straw buyer, rather than someone who had
made multiple real estate purchases.

      q.  On or about June 28, 2006, at approximately 2:23
p.m., GORVITS had a telephone conversation with BUZAKHER, in
which, in substance and in part, they discussed which bank would
not scrutinize a straw buyer's credit if BUZAKHER submitted an
application for full financing of the purchase of a three-family
house.

      r.  On or about June 28, 2006, at approximately 6:02
p.m., GORVITS had a telephone conversation with FRANSWA LIGON,
the defendant, in which, in substance and in part, they discussed

18

a straw buyer's credit rating and LIGON noted that the straw buyer would be used to purchase multiple properties.

s.    On or about June 30, 2006, at approximately 3:49 p.m., GORVITS had a telephone conversation with GELIN in which, in substance and in part, they discussed various straw buyers, and GORVITS and GELIN agreed to use the straw buyers with the best credit ratings for the biggest deals with the largest spread between the inflated sale price and the actual sale price.

t.    On or about July 6, 2006, at approximately 9:11 p.m., GORVITS had a telephone conversation with MISHELEVICH in which, in substance and in part, GORVITS asked MISHELEVICH to find him a straw buyer for a big project, and GORVITS specified that the straw buyer needed a good credit rating and fifty thousand dollars in bank accounts.

u.    On or about July 7, 2006, at approximately 12:19 p.m., GORVITS had a telephone conversation with LIGON in which, in substance and in part, they discussed the fact that a straw buyer's credit rating had gone down, GORVITS told LIGON that they would have to raise the straw buyer's reported income, and GORVITS stated that he could make such a change to the mortgage application because GORVITS knew someone inside the bank who could help him.

v.    On or about July 11, 2006, at approximately 12:02 p.m., GORVITS had a telephone conversation with CARL CARR, the

19

defendant, in which, in substance and in part, they discussed their profit from a real estate transaction they had previously completed together, and CARR noted that he could make more money by doing another deal with ALEX LIPKIN.

w.    On or about August 25, 2006, at approximately 2:25 p.m., MISHELEVICH had a telephone conversation with a co-conspirator not named as a defendant herein ("CC-2") in which, in substance and in part, MISHELEVICH explained to CC-2 how to make it appear to a lender that MARINA KLOTSMAN, the defendant, who was acting as a straw buyer, had withdrawn $60,000 from her bank account for a down payment.

x.    On or about August 28, 2006, at approximately 5:38 p.m., LIPKIN had a telephone conversation with MISHELEVICH, in which, in substance and in part, MISHELEVICH stated that he was going to do a deal with OLEG ANOHKIN, the defendant, and LIPKIN directed MISHELEVICH to find an appraiser who would give MISHELEVICH the highest possible appraisal.

y.    On or about September 7, 2006, at approximately 12:42 p.m., MISHELEVICH had a telephone conversation with FAINA PETROVSKAYA, the defendant, in which, in substance and in part, they discussed several upcoming closings with straw buyers.  With respect to one property, PETROVSKAYA told MISHELEVICH that they could close on it because the straw buyer had signed certain documents.  With respect to another straw buyer's loan

20

application, PETROVSKAYA stated, in substance and in part, that she had tried to submit the application to a lender, but that none of the banks wanted to do the deal.

z.    On or about September 8, 2006, at approximately 12:15 p.m., MISHELEVICH had a telephone conversation with RICARDO ACOSTA, the defendant, in which, in substance and in part, they discussed obtaining an inflated appraisal for a property they wanted to purchase with a straw buyer, and MISHELEVICH and ACOSTA agreed to contact TOMER SINAI, the defendant to conduct an appraisal.

aa.    On or about September 9, 2006, at approximately 2:27 p.m., MISHELEVICH had a telephone conversation with YAKUBOV in which, in substance and in part, YAKUBOV stated that a straw buyer had complained because a bank had called the straw buyer about his failure to make mortgage payments.  YAKUBOV, in substance and in part, asked MISHELEVICH to take care of the problem, and noted that the straw buyer might tell on everyone.

bb.    On or about September 12, 2006, at approximately 1:01 p.m., MISHELEVICH had a telephone conversation with ACOSTA in which, in substance and in part, ACOSTA specified the value at which SINAI should appraise a particular property.

cc.    On or about September 20, 2006, at approximately 12:05 p.m., MISHELEVICH had a telephone conversation with ERIC CALLAHAN, the defendant, in which, in substance and in part,

CALLAHAN said that he needed MISHELEVICH to help him close a deal because he needed the money to use in his other deals.

dd.  On or about September 21, 2005, at approximately 11:07 a.m., MISHELEVICH had a telephone conversation with CALLAHAN in which, in substance and in part, MISHELEVICH explained that a mortgage application had been rejected by five different banks but that MISHELEVICH would try to submit the application to another two lenders, and CALLAHAN stated that he, GELIN and LIGON had to meet in order to match straw buyers to various properties.

ee.  On or about September 28, 2006, at approximately 3:54 p.m., MISHELEVICH had a telephone conversation with PETROVSKAYA in which, in substance and in part, they discussed the submission of fraudulent mortgage applications.

ff.  On or about September 29, 2006, at approximately 1:08 p.m., MISHELEVICH had a telephone conversation with CIOFALO in which, in substance and in part, they discussed the various ways they could change a straw buyer's loan application for an investment property to an owner-occupied property, including by submitting false documents to the lender.

gg.  On or about October 3, 2006, at approximately 1:24 p.m., MISHELEVICH had a telephone conversation with NEUSTEIN in which, in substance and in part, MISHELEVICH asked NEUSTEIN to conduct an appraisal of one of the Apartments in a building in

22

Manhattan, where NEUSTEIN had previously done appraisals.

hh.  On or about October 10, 2006, at approximately 3:34 p.m., MISHELEVICH had a telephone conversation with DANIEL MIKHLIN, a/k/a "Danik," the defendant, in which, in substance and in part, MIKHLIN asked MISHELEVICH whether MISHELEVICH had a contact working for a lender who could facilitate one of MIKHLIN's real estate deals.

ii.  On or about October 11, 2006, at approximately 12:36 p.m., MISHELEVICH had a telephone conversation with NATHANIEL KESSMAN, the defendant, in which, in substance and in part, MISHELEVICH explained that he needed to submit corrected bank statements in connection with the mortgage application file of straw buyer MARINA KLOTSMAN, the defendant.

jj.  On or about October 11, 2006, at approximately 2:43 p.m., MISHELEVICH had a telephone conversation with KESSMAN in which, in substance and in part, KESSMAN stated that the purchase price of the property was too high, and that it appeared to be a flip.  KESSMAN told MISHELEVICH to lower the price and to provide KESSMAN with new documents reflecting the lower price.

kk.  On or about October 12, 2006, MISHELEVICH, MARINA DUBIN and KLOTSMAN attended a closing for a fraudulently obtained mortgage at a law office located in Brooklyn, New York.

ll.  On or about October 16, 2006, at approximately 3:25 p.m., MISHELEVICH had a telephone conversation with MIKHLIN

in which they discussed, in substance and in part, how to divide the proceeds of a fraudulently obtained mortgage loan.

mm.  On or about November 10, 2006, at approximately 2:55 p.m., LIPKIN had a telephone conversation with LUCIANNE MORELLO, the defendant, in which, in substance and in part, MORELLO reprimanded LIPKIN for failing to carefully examine the paperwork before a closing, and explained that, as a result, the file was being investigated by the bank.

nn.  On or about November 10, 2006, at approximately 5:29 p.m., LIPKIN had a telephone conversation with DUBIN in which, in substance and in part, LIPKIN inquired about a problem that JOSEPH PAPERNY, the defendant, was having with a property, and DUBIN explained that she had stopped making mortgage payments on that property because it had been held for thirteen months and was ready to be sold.

oo.  On or about November 13, 2006, at approximately 2:11 p.m., LIPKIN and DUBIN had a telephone conversation in which, in substance and in part, DUBIN described how the husband of a disgruntled straw buyer of one of PAPERNY's properties had threatened DUBIN, saying that a million-dollar mortgage had been closed without his or his wife's knowledge.

pp.  On or about November 15, 2006, at approximately 5:48 p.m., LIPKIN had a telephone conversation with MISHELEVICH in which, in substance and in part, LIPKIN noted that MISHELEVICH

24

had paid himself and others approximately $25,000 from one deal, and asked MISHELEVICH when he planned on paying LIPKIN.

qq.  On or about November 16, 2006, at approximately 12:29 p.m., LIPKIN had a telephone conversation with DUBIN in which, in substance and in part, she told him that a straw buyer had contacted one of the lenders and complained that the straw buyer had not signed any documents or received any money from the lender.  DUBIN noted that PAPERNY, not the straw buyer, was the owner.

rr.  On or about November 29, 2006, LIPKIN had a telephone conversation with BUZAKHER in which, in substance and in part, they discussed how to finance the purchase of a property using a straw buyer.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Bank Fraud re: 1370 Park Place, Brooklyn, New York)

The Grand Jury further charges:

28.  In on or about November 2004, in the Southern District of New York and elsewhere, ALEX GORVITS, a/k/a "Lyosha," the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by,

25

and under the custody and control of, such financial institution,
by means of false and fraudulent pretenses, representations and
promises, to wit, GORVITS submitted, and caused to be submitted,
false employment and financial information, among other things,
to the Tarrytown, New York branch office of First Franklin
Financial Corporation, in order to procure home mortgage loans in
the amount of $565,000 for the purchase of residential real
estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE

(Bank Fraud re: 184 Willowbrook Road, Staten Island)

The Grand Jury further charges:

29.  In on or about September 2005, in the Southern
District of New York and elsewhere, MARINA DUBIN, IGOR BUZAKHER,
a/k/a "Jeff," and JOSEPH PAPERNY, the defendants, unlawfully,
willfully, and knowingly did execute, and attempt to execute, a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations and promises, to
wit, DUBIN, BUZAKHER, and PAPERNY submitted, and caused to be
submitted, false employment and financial information to First

26

Franklin in order to procure home mortgage loans in the amount of $580,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FOUR

(Bank Fraud re: 221 Washington Avenue, Brooklyn, New York)

The Grand Jury further charges:

30.  In on or about September 2005, in the Southern District of New York and elsewhere, MARINA DUBIN, IGOR BUZAKHER, a/k/a "Jeff," DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom," and NATHANIEL KESSMAN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DUBIN, BUZAKHER, NEUSTEIN, SINAI and KESSMAN submitted and caused to be submitted false employment and financial information and false real estate appraisals to First Franklin in order to procure home mortgage loans in the amount of $1.5 million for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

27

**COUNT FIVE**

(Bank Fraud re: 1058 Decatur Street, Brooklyn, New York)

The Grand Jury further charges:

31.  In on or about May 2005, in the Southern District of New York and elsewhere, ALEX GORVITS, a/k/a "Lyosha," MARINA DUBIN, TOMER SINAI, a/k/a "Tom," and NATHANIEL KESSMAN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, GORVITS, DUBIN, SINAI and KESSMAN submitted and caused to be submitted false employment information and false real estate appraisals to First Franklin in order to procure home mortgage loans in the amount of $544,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

**COUNT SIX**

(Bank Fraud re: 100 Oceana Avenue, Apt. 3E, Brooklyn, New York)

The Grand Jury further charges:

32.  In on or about December 2005, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a

28

"Alex," a/k/a "Shorty," a/k/a "Melekiy," DAVID NEUSTEIN, OLEG ANOKHIN, and MARYANN FURMAN, a/k/a "Marina," the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, LIPKIN, NEUSTEIN and ANOKHIN submitted and caused to be submitted false employment, financial and residency information to Washington Mutual Bank, in order to procure a home mortgage loan in the amount of $862,500 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SEVEN

(Wire Fraud re: 225-19 113th Ave, Queens Village, New York)

The Grand Jury further charges:

33. In or about May 2005, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a/ "Melekiy," the defendant, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by

29

means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, LIPKIN submitted and caused to be submitted by facsimile false financial information and other information from Brooklyn, New York to a Countrywide Home Loans branch office in Florida in order to procure a home mortgage loan in the amount of $396,000 for the purchase of residential real estate.

(Title 18, United States Code, Sections 1343 and 2.)

### **COUNT EIGHT**

(Wire Fraud re: 330 Old Tacy Road, Kauneonga Lake, New York)

The Grand Jury further charges:

34.  In or about October 2005, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," MARINA DUBIN, JOHN CIOFALO, and MARIYA BADYUK, the defendants, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, LIPKIN, DUBIN, CIOFALO and BADYUK submitted and caused to be submitted documents containing false employment and other information by interstate facsimile and other means to BNC Mortgage Company in order to procure a home mortgage loan in the amount of $396,000.

(Title 18, United States Code, Sections 1343 and 2.)

30

## 243 West 98th Street Properties

### COUNTS NINE THROUGH TWELVE

(Bank Fraud on Flagstar Bank re: 243 West 98th Street,
Apartments 4B, 4C and 6E, New York, NY)

The Grand Jury further charges:

35.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $1,849,500, submitted and caused to be submitted to Flagstar Bank documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary residence, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

31

| Count | Defendants | Date | Loan Amount and Apt. No. |
|-------|-----------|------|--------------------------|
| Nine | ALEKSANDER LIPKIN, GARRI ZHIGUN, GALINA ZHIGUN, ALEXANDER KAPLAN, DAVID NEUSTEIN | 1/13/06 | $870,000 Apt. 4C |
| Ten | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, a/k/a "Lyosha," DAVID NEUSTEIN | 5/4/06 | $320,000 Apt. 4C |
| Eleven | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR, DAVID NEUSTEIN | 5/9/06 | $322,000 Apt. 4B |
| Twelve | ALEKSANDER LIPKIN, GARRI ZHIGUN, DAVID NEUSTEIN, JOSEPH PAPERNY | 4/13/06 | $337,500 Apt. 6E |

(Title 18, United States Code, Sections 1344 and 2.)

## COUNTS THIRTEEN AND FOURTEEN

(Bank Fraud on Bank United re: 243 West 98th Street, Apartments 4C and 7E, New York, NY)

The Grand Jury further charges:

36.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets,

32

securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $1,900,000, submitted and caused to be submitted to Bank United documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary residence, the borrower's employment and income, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date | Loan Amount and Apt. No. |
|-------|------------|------|--------------------------|
| Thirteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, MARINA DUBIN | 4/12/06 | $1,000,000 Apt. 4C |
| Fourteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, MARINA DUBIN | 3/15/06 | $900,000 Apt. 7E |

(Title 18, United States Code, Sections 1344 and 2.)

### **COUNT FIFTEEN**

(Bank Fraud on First National Bank of Arizona re: 243 West 98th Street, Apartment 6E, New York, NY)

The Grand Jury further charges:

37.  On or about January 23, 2006, in the Southern District of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a

"Alex," a/k/a "Shorty," a/k/a "Melekiy," GARRI ZHIGUN, GALINA ZHIGUN, ALEXANDER KAPLAN, and DAVID NEUSTEIN, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," LIPKIN, GARRI ZHIGUN, GALINA ZHIGUN, ALEXANDER KAPLAN, and DAVID NEUSTEIN, the defendants, submitted and caused to be submitted to First National Bank of Arizona documents containing false information and material omissions regarding the fair market value of the Apartment and the fact that the Apartment was subject to New York's rent regulation laws, among other things, in order to procure home mortgage and/or equity loans in the amount of $616,500 for the purchase of Apartment 6E.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNTS SIXTEEN THROUGH NINETEEN

(Wire Fraud on No Red Tape Mortgage re: 243 West 98th Street,
Apartments 2C, 2B, 4B and 7A New York, NY)

The Grand Jury further charges:

38.  On or about the dates set forth below, in the
Southern District of New York and elsewhere, the defendants
identified in the table below, unlawfully, willfully, and
knowingly did devise a scheme and artifice to defraud and to
obtain property by means of false and fraudulent pretenses and
representations, and did transmit and cause to be transmitted by
means of wire and radio communication in interstate commerce, a
writing, sign, signal, picture and sound, to wit, the defendants
identified in the table below, in order to obtain home mortgage
and/or equity loans totaling $3,876,000, which loans were funded
on or about the dates identified in the table below by interstate
wire transmissions through a bank in Manhattan, submitted and
caused to be submitted to No Red Tape Mortgage documents
containing false information and material omissions regarding the
borrower's intent to live in the Apartment as a primary
residence, the fair market value of the Apartment, and the fact
that the Apartment was subject to New York's rent regulation
laws, among other things.

35

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|---|---|---|---|
| Sixteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEXANDER KAPLAN, DAVID NEUSTEIN | 1/13/06 | $783,000 Apt. 2C |
| Seventeen | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, MARINA DUBIN | 4/12/06 | $980,000 Apt. 2B |
| Eighteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEXANDER KAPLAN, MARYANN FURMAN, a/k/a "Marina," DAVID NEUSTEIN | 1/23/06 | $783,000 Apt. 4B |
| Nineteen | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, MARINA DUBIN | 6/23/06 | $1,330,000 Apt. 7A |

(Title 18, United States Code, Sections 1343 and 2.)

**COUNTS TWENTY THROUGH TWENTY-FIVE**

(Bank Fraud on National City Corporation re:
243 West 98th Street, Apartments 2B, 2C, 4B, 4C,
6E and 7E, New York, NY)

The Grand Jury further charges:

39.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $1,876,250, submitted and caused to be submitted to National City Corporation documents containing false information and material omissions regarding the borrower's intent to live in the Apartment as a primary residence, the borrower's employment and income, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date | Loan Amount and Apt. No. |
|-------|-----------|------|--------------------------|
| Twenty | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY | 4/12/06 | $350,000 Apt. 2B |
| Twenty-One | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOHN GELIN, a/k/a "Buddha," | 9/12/06 | $350,000 Apt. 2C |
| Twenty-Two | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR | 4/18/06 | $315,000 Apt. 4B |
| Twenty-Three | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEX GORVITS, a/k/a "Lyosha" | 4/17/06 | $330,000 Apt. 4C |
| Twenty-Four | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, DAVID NEUSTEIN | 5/1/06 | $281,250 Apt. 6E |
| Twenty-Five | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, MARINA DUBIN, DAVID NEUSTEIN | 3/16/06 | $250,000 Apt. 7E |

(Title 18, United States Code, Sections 1344 and 2.)

## COUNTS TWENTY-SIX THROUGH TWENTY-EIGHT

(Wire Fraud on New Century Mortgage re: 243 West 98th Street, Apartments 3A, 3B and 7A, New York, NY)

The Grand Jury further charges:

40.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $2,180,000, which loans were approved by interstate wire transmissions to a branch in New York, submitted and caused to be submitted to New Century Mortgage documents containing false information and material omissions regarding the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|---|---|---|---|
| Twenty-Six | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEXANDER KAPLAN, DAVID NEUSTEIN | 1/13/06 | $680,000 Apt. 3A |

| Twenty-Seven | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEXANDER KAPLAN, MARYANN FURMAN, a/k/a "Marina," DAVID NEUSTEIN | 1/12/06 | $750,000 Apt. 3B |
| Twenty-Eight | ALEKSANDER LIPKIN, GARRI ZHIGUN, ALEXANDER KAPLAN, DAVID NEUSTEIN | 1/17/06 | $750,000 Apt. 7A |

(Title 18, United States Code, Sections 1343 and 2.)

## COUNTS TWENTY-NINE THROUGH THIRTY-TWO

(Wire Fraud on First Magnus Financial Corporation re: 243 West 98th Street, Apartments 2C, 4B, 6E and 7E, New York, NY)

The Grand Jury further charges:

41.   On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants identified in the table below, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses and representations, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants identified in the table below, in order to obtain home mortgage and/or equity loans totaling $2,912,500, which loans were authorized by interstate wire transmissions to a bank in Manhattan, on or about the dates identified in the table below, submitted and caused to be submitted to First Magnus Financial Corporation documents containing false information and material

40

omissions regarding the borrower's intent to live in the Apartment as a primary residence, the borrower's employment and income, the fair market value of the Apartment, and the fact that the Apartment was subject to New York's rent regulation laws, among other things.

| Count | Defendants | Date of wire | Amount wired and Apt. No. |
|-------|-----------|--------------|---------------------------|
| Twenty-Nine | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOHN GELIN, a/k/a "Buddha," | 9/12/06 | $980,000 Apt. 2C |
| Thirty | ALEKSANDER LIPKIN, GARRI ZHIGUN, CARL CARR, MARINA DUBIN | 4/17/06 | $980,000 Apt. 4B |
| Thirty-One | ALEKSANDER LIPKIN, GARRI ZHIGUN, JOSEPH PAPERNY, DAVID NEUSTEIN, MARINA DUBIN | 4/13/06 | $787,500 Apt. 6E |
| Thirty-Two | ALEKSANDER LIPKIN, GARRI ZHIGUN, OLEG ANOKHIN, DAVID NEUSTEIN | 5/6/06 | $165,000 Apt. 7E |

(Title 18, United States Code, Sections 1343 and 2.)

41

**COUNTS THIRTY-THREE THROUGH THIRTY-FIVE**

(Mail Fraud on BNC Mortgage Company re: 243 West 98th Street,
Apartments 2B, 5E and 7E, New York, NY)

The Grand Jury further charges:

42. In or about January 2006, in the Southern District
of New York and elsewhere, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a
"Shorty," a/k/a "Melekiy," GARRI ZHIGUN, ALEXANDER KAPLAN, and
DAVID NEUSTEIN, the defendants, having devised and intending to
devise a scheme and artifice to defraud, and for obtaining money
and property by means of false and fraudulent pretenses,
representations and promises, to wit, a scheme to obtain home
mortgage and/or equity loans totaling $2,042,000 by, among other
things, submitting and causing to be submitted to BNC Mortgage
Company documents containing false representations and material
omissions regarding the fair market value of the Apartment
identified in the table below and the fact that the Apartment
identified in the table below was subject to New York's rent
regulation laws, among other things, for the purpose of executing
such scheme and artifice and attempting so to do, unlawfully,
willfully and knowingly would and did place in a post office and
authorized depository for mail matter, matters and things to be
sent and delivered by the Postal Service, and would and did take
and receive therefrom, such matters and things, and would and did
knowingly cause to be delivered by mail according to the
direction thereon, and at the place at which it was directed to

42

be delivered by the person to whom it was addressed, such matters and things, to wit, ALEKSANDER LIPKIN, a/k/a "Alex," a/k/a "Shorty," a/k/a "Melekiy," GARRI ZHIGUN, ALEXANDER KAPLAN, and DAVID NEUSTEIN, the defendants, and others known and unknown, caused the following mailings to be made from New York County, via the Postal Service, for the purpose of defrauding BNC Mortgage Company:

| Count | Date of mortgage | Mailing |
|-------|------------------|---------|
| Thirty-Three | 1/23/06 | mortgage for Apt. 2B for $746,000 |
| Thirty-Four | 1/23/06 | mortgage for Apt. 5E for $616,500 |
| Thirty-Five | 1/13/06 | mortgage for Apt. 7E for $680,000 |

(Title 18, United States Code, Sections 1341 and 2.)

43

**FIRST FORFEITURE ALLEGATION**

43.  As a result of committing the offense alleged in
Count One of this Indictment, ALEKSANDER LIPKIN, a/k/a "Alex,"
a/k/a "Shorty," a/k/a "Melekiy," GALINA ZHIGUN, GARRI ZHIGUN,
ALEXANDER KAPLAN, MARYANN FURMAN, a/k/a "Marina," IGOR
MISHELEVICH, a/k/a "Ryzhiy," ALEX GORVITS, a/k/a "Lyosha," MARINA
DUBIN, IGOR BUZAKHER, a/k/a "Jeff," JOSEPH PAPERNY, DANIEL
MIKHLIN, a/k/a "Danik," JOHN GELIN, a/k/a "Buddha," FRANSWA
LIGON, FUAD YAKUBOV, RICARDO ACOSTA, ERIC CALLAHAN, DOUGLAS
ELLISON, OLEG ANOKHIN, DAVID NEUSTEIN, TOMER SINAI, a/k/a "Tom,"
NATHANIEL KESSMAN, CARL CARR, JOHN CIAFOLO, LUCIANNE MORELLO,
FAINA PETROVSKAYA, MARIYA BADYUK, a/k/a "Masha," and MARINA
KLOTSMAN, the defendants, shall forfeit to the United States
pursuant to 18 U.S.C. § 982, any property constituting or derived
from proceeds obtained directly or indirectly as a result of the
conspiracy to commit the bank, wire and mail fraud offenses
alleged in Count One of this Indictment, including but not
limited to the following:

a.  At least $200 million in United States
currency, in that such sum in aggregate is property representing
the amount of proceeds obtained as a result of the offense
alleged in Count One of the Indictment, for which the defendants
are jointly and severally liable;

b.  Any interest of ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in the

44

real property and appurtenances thereto known as 1085 Seawane
Drive, Hewlett Harbor, New York;

   c. Any interest of JOSEPH PAPERNY, the
defendant, in the real property and appurtenances thereto known
as 25 Four Columns Drive, Morganville, New Jersey.

## SECOND FORFEITURE ALLEGATION

   44. As a result of committing the mail, wire and/or
bank fraud offenses alleged in Counts Two through Thirty-Five of
this Indictment, the defendants shall forfeit to the United
States pursuant to 18 U.S.C. § 982 any property constituting or
derived from proceeds obtained directly or indirectly as a result
of the mail, wire and/or bank fraud offenses alleged in Counts
Two through Thirty-Five of this Indictment, including but not
limited to at least $10,000,000 in United States currency, in
that such sum in aggregate is property representing the amount of
proceeds obtained as a result of the mail, wire and/or bank fraud
offenses charged in Counts Two through Thirty-Five of the
Indictment.

## SUBSTITUTE ASSET PROVISION

   45. If any of the above-described forfeitable
property, as a result of any act or omission of the defendant(s):

   (1) cannot be located upon the exercise of due
     diligence;

(2)   has been transferred or sold to, or deposited
      with, a third person;

(3)   has been placed beyond the jurisdiction of the
      Court;

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which
      cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §
982(b), to seek forfeiture of any other property of said
defendant(s) up to the value of the above forfeitable property,
including but not limited to the following:

      a.   Any interest of ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in a 2007
blue two-door Bentley vehicle, bearing New York license plate
DSW1419;

      b.   Any interest of ALEKSANDER LIPKIN, a/k/a
"Alex," a/k/a "Shorty," a/k/a "Melekiy," the defendant, in the
real property and appurtenances thereto known as 293 Avenue S,
Brooklyn, New York;

      c.   Any interest of MARINA DUBIN, the defendant,
in the real property and appurtenances thereto known as 293
Avenue S, Brooklyn, New York;

      d.   Any interest of ALEX GORVITS, a/k/a "Lyosha,"
the defendant, in the real property and appurtenances thereto
known as 274 Norway Avenue, Staten Island, New York.

46

           e.    Any interest of IGOR BUZHAKER, a/k/a "Jeff," the defendant, in the real property and appurtenances thereto known as:

           i.   457 Bedford Avenue, Staten Island, New York;

           ii.  212 Lefferts Place, Brooklyn, New York;

           iii. 924 Jefferson Avenue, Brooklyn, New York;

           iv.  553 Gates Avenue, Brooklyn, New York;

           v.   99 Avenue U, Brooklyn, New York; and

           vi.  284 Mac Dougal Street, Brooklyn, New York.

47

      f.    Any interest of OLEG ANOKHIN, the defendant, in the real property and appurtenances thereto known as:

    i.   67 Sharrotts Road, Staten Island, New York;

    ii.  100 Oceana Drive West, Apartment 6J, Brooklyn, New York;

    iii. 40 Oceana Drive West, Apartment 9C, Brooklyn, New York.

(Title 18, United States Code, Section 982 and Title 18, United States Code, Sections 1341, 1343 and 1344.)


_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

48